# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00149-COA

**MICHAEL HOLLIDAY**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:                01/11/2022
TRIAL JUDGE:                          HON. ROBERT THOMAS BAILEY
COURT FROM WHICH APPEALED:  KEMPER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       JAMES A. WILLIAMS
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                      BY: CASEY B. FARMER
NATURE OF THE CASE:              CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                        AFFIRMED - 04/11/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A man plead guilty to statutory rape and sexual battery. He was sentenced to serve

thirty years. The defendant filed a petition for post-conviction relief arguing that his trial

counsel was ineffective and that he was entitled to an evidentiary hearing. The trial court

denied the petition, finding he knowingly and voluntarily plead guilty. The defendant

appealed. Finding no error, we affirm.

## BACKGROUND

¶2.     Michael Holliday was indicted in Kemper County on one count of statutory rape and

one count of sexual battery. He was also charged with one count of incest and one count of

child exploitation. Holliday's daughter was the victim in each of his charges.

¶3. His first court-appointed counsel withdrew due to his appointment as a circuit court judge. Holliday was then appointed a second attorney. He claims this attorney worked out a plea deal of ten years to serve but later withdrew as his counsel due to becoming an assistant district attorney. Holliday claimed that despite his withdrawal, the attorney assured him the ten-year deal would stand. However, Holiday later stated that because of docket overcrowding, the plea was never submitted to the trial court. A third attorney was then appointed. Holliday claimed the new attorney offered him fifteen years to serve, but he ultimately turned it down and requested a trial. Afterward, Holliday filed a petition to enter a guilty plea. During the hearing on the guilty plea, the State nolle prosequied the other two charges.

¶4. The trial court then explained to Holliday that by pleading guilty, he would waive certain Constitutional guarantees or rights. Holliday stated that he understood and that his attorney went over his rights with him. The court also asked if he was satisfied with the legal services of his attorney. He responded, "Yes." He then affirmed his attorney went over the essential elements of the crimes to which he plead guilty. The trial court further asked if Holliday understood the court may impose the same punishment as if he had plead not guilty. He replied, "Yes, I do." Holliday also affirmed that he was not promised a lighter sentence if he plead guilty.

¶5. The court subsequently entered an order accepting Holliday's guilty plea and setting his sentencing date. The order stated there was "no agreement between the Office of the District Attorney and the Defendant on initial time to serve" and that this was a "true BLIND

PLEA."

¶6.    At Holliday's sentencing hearing, the defense called the victim as a witness.  Counsel for Holliday asked the victim what would be an appropriate sentence for her father.  Overwhelmed with emotion, she responded, "I don't know."  The trial court then told the victim, "If you don't have an opinion, you don't have to give one; but as [defense counsel] stated, you are the victim of this matter."  The defense then rested.  The court sentenced Holliday to thirty years to serve in custody for statutory rape and fifteen years to serve in custody for sexual battery, with fifteen years suspended.

¶7.    Holliday timely filed a petition for post-conviction relief first arguing his due process rights were violated because he plead guilty with the expectancy of a much lesser sentence than thirty years day-for-day.  He also argued his due process rights were violated because the State "successfully eliminated" his daughter from giving her opinion regarding an appropriate sentence.  He therefore claimed the matter should have been further explored.  Holliday further argued his trial counsel was ineffective because the attorney failed to timely accept the original plea offer, failed to advise him that a "plea in the blind" would expose him to a harsher sentence, and failed to "properly marshal favorable testimony from the victim."

¶8.    Attached to his petition were three affidavits—one from Holliday's other daughter and two from him.  In the daughter's affidavit, she stated that her father said he was "offered . . . 10 years, but he didn't sign the paperwork because the Court was tied up."  She said her father also stated he could "face life, but if he plead guilty he would get less time."

3

¶9.    In Holliday's affidavits, he explained he wanted to withdraw his guilty plea because he was "mislead." He claimed his first attorney worked out a "10 year plea [deal] that was suppose[d] to stand," but his second attorney instead presented him with a fifteen-year plea deal. He stated he turned down the subsequent plea offer and asked to go to trial. However, he claimed his attorney told him that he was facing "about 90 years" and that he would receive a lesser sentence if he plead guilty. So, he said he agreed and plead guilty.

¶10.   Furthermore, regarding whether he knew the sentencing range, he stated, "[T]he Judge explain[ed] to me about it but I didn't believe I would receive the maximum sentence."

¶11.   The trial court denied Holliday's PCR petition. In a detailed and thoughtful opinion, the court stated, "A knowing and voluntary guilty plea waives certain constitutional rights, among them, the privilege against self-incrimination, the right to confront and cross-examine the State's witnesses, the right to a jury trial, and the right to have the State prove each element of the offense beyond a reasonable doubt." In analyzing whether Holliday's plea was knowing and voluntary, the court stated, "[Holliday] repeatedly affirmed to the Court that he understood he was being charged under Mississippi Code Annotated §§ 97-3-65(1)(a) and 97-3-95, what the elements of those crimes were, what the State would have to prove, and what the possible punishments for the crimes were." The trial court found that Holliday's guilty plea was knowing and voluntary; therefore, his claims were without merit.

¶12.   Further, the trial court found Holliday did not receive an unfair sentence, as he claims the State prevented the victim from giving an opinion regarding an appropriate sentence. The trial court stated, "The purpose of a victim statement is not to provide rights to the convicted

4

criminal." Relying on Mississippi Code Annotated sections 99-19-151 to 99-19-161(Rev. 2015), the court found "the victim was not required to submit a victim impact statement or cooperate in the preparation of a victim impact statement."

¶13. Aggrieved, Holliday appeals.

## STANDARD OF REVIEW

¶14. "When reviewing a trial court's denial or dismissal of a PCR petition, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Cuevas v. State*, 304 So. 3d 1163, 1167 (¶19) (Miss. Ct. App. 2020).

## DISCUSSION

¶15. Holliday's two arguments on appeal both revolve around the trial court's disposition of his PCR petition without an evidentiary hearing. He further argues his trial counsel was ineffective because the attorney failed to timely accept a plea offer, failed to advise him that an open plea would probably result in a harsher sentence, and failed to adequately question the victim at his sentencing hearing.

¶16. This Court has ruled on a nearly identical issue in a case where a man plead guilty to drug trafficking. *Cuevas*, 304 So. 3d at 1166 (¶12). At his plea hearing, the trial court asked Cuevas whether his attorney discussed the facts, circumstances, and elements of the crime of trafficking and whether his plea was freely and voluntarily given. *Id*. He affirmed each of the court's questions. *Id*. He was subsequently sentenced to serve eight years in custody. *Id*. Cuevas then filed a PCR petition, arguing the trial court erred in denying his PCR

petition without an evidentiary hearing. *Id*. at 1167 (¶18). He further argued his trial counsel was ineffective because he failed to provide evidence to substantiate the mitigating factors and failed to show the pre-sentencing report to his client. *Id*. The trial court denied his petition, finding it was clear on the face of his petition that he was not entitled to PCR. *Id*. He appealed. *Id*.

¶17. This court began by stating that "not all PCR petitions require a full adversarial hearing." *Id*. at (¶21). We then explained, "[A] PCR petition may be dismissed without the benefit of a hearing if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." *Id*. Looking to the face of Cuevas' petition, this court found that our ability to analyze his claim was limited because he plead guilty. *Id*. at (¶22). Therefore, his "PCR claim [was] waived unless we [found] his guilty plea was involuntary." *Id*. Our Court stated that "pleas are traditionally voluntary as long as a judge advises a defendant of his rights, the nature of the charge against him, and the consequences of his plea. *Id*. at (¶23).

¶18. Ultimately, we found Cuevas' plea was voluntary because the trial court "adequately afforded [him] an opportunity to raise any concerns that could have affected his freedom." *Id*. at 1168 (¶26). Also, he "affirmed to the [trial] court that he was fully aware of the consequences of his decisions." *Id*. Therefore, this Court held that Cuevas' ineffective-assistance-of-counsel claim was without merit and that his petition needed no further inquiry. *Id*. at (¶28).

¶19. Like *Cuevas*, "it plainly appears from the face of the motion, any annexed exhibits and

the prior proceedings . . . that [Holliday] is not entitled to any relief." *Id.* at 1167 (¶21). Not only is this evident from the transcript of his guilty plea, but this is also evident from his own affidavit where he admits the trial judge made him aware of the sentencing range, but he simply did not believe the judge. The trial court thoroughly explained to him the facts and circumstances surrounding each of his charges, the elements of those charges, and the consequences of his guilty plea. Critically, the trial court explained that by pleading guilty, he would waive certain constitutional rights and that the trial court could impose the maximum sentence for each charge. He repeatedly affirmed to the trial court he was aware of those consequences.

¶20. Aligned with our ruling in *Cuevas*, Holliday's guilty plea was knowing and voluntary because he was "afforded . . . an opportunity to raise any concerns," and he affirmed he was "fully aware of the consequences" of his decision. *Id*. at (¶26).

¶21. Furthermore, Holliday does not challenge the voluntariness of his guilty plea. Rather, his argument centers on an expectation that he would receive a lesser sentence. But this expectation was clearly addressed by the trial court during his plea hearing. And by Holliday's own sworn testimony, although the trial court explained the consequences of his guilty plea, he simply "didn't believe" he would receive a thirty-year sentence.

¶22. Therefore, because Holliday voluntarily and knowingly plead guilty, his ineffective-assistance-of-counsel claim is without merit. Furthermore, he is not entitled to an evidentiary hearing. Accordingly, the trial court did not err in denying Holliday's petition.

¶23. **AFFIRMED.**

7

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**